UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES F. BARRETT,

                              Plaintiff,

   v.                                                **DECISION AND ORDER**
                                                            10-CV-618S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

       1.       Plaintiff James F. Barrett challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled since November 12, 2002, due to impairments of the spine. Plaintiff contends that this impairment renders him unable to work, and therefore asserts that he is entitled to payment of Disability Insurance Benefits ("DIB") under the Act.

       2.       Plaintiff filed an application for DIB payments on January 13, 2003. His application was initially denied, after which he timely filed a request for a hearing. Pursuant to that request, an administrative hearing was held on September 21, 2005 before ALJ Bruce R. Mazzarella, at which Plaintiff appeared with counsel and testified. The ALJ considered the case *de novo*, and on October 11, 2005, issued a decision denying Plaintiff's application for benefits. Plaintiff filed a request for review with the Appeals Council, which, on October 24, 2006, vacated and remanded the case for further administrative hearings. ALJ Mazzarella held another administrative hearing on May 16, 2007. Plaintiff appeared with counsel and testified. ALJ Mazzarella considered the case *de novo* and issued another unfavorable decision on April 7, 2008. On May 27, 2010, the

Appeals Council denied Plaintiff's request for review. Plaintiff filed the current civil action on July 26, 2010, challenging Defendant's final decision.[1]

3. On February 10, 2011, the Commissioner filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff followed suit and filed his own Motion for Judgment on the Pleadings on March 1, 2011. Briefing of the motion concluded on April 8, 2011, at which time this Court took the motions under advisement without oral argument. For the reasons set forth below, the Commissioner's motion is denied and this case is remanded for further proceedings.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano*,* 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must

---

[1]The ALJ's April 7, 2008 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6.    The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7.    This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the

claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in any substantial gainful activity since the alleged onset of the disability (R. at 16);[2] (2) Plaintiff's chronic back discomfort is considered a "severe" impairment within the meaning of the Act (R. at 17); (3) Plaintiff's impairments or a combination of impairments do not meet the criteria necessary for finding a disabling impairment under the regulations (R. at 18); (4) Plaintiff has the residual functional capacity ("RFC") to sit for 30 minutes at one time and stand for 30 minutes at one time and the ability to alternate sitting, standing, and walking for an eight-hour

---

[2] Citations to the underlying administrative record are designated as "R."

4

workday, with certain limitations (R. at 19);[3] and (5) Plaintiff is capable of performing past relevant work as a construction project manager (R. at 25). Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, at any time through the date of his decision, April 7, 2008. (R. at 41.)

      10.     Plaintiff argues that the ALJ's decision must be reversed because he improperly disregarded a treating medical source's opinion, and was not based on substantial evidence. In his opposition to Defendant's Motion for Judgment on the Pleadings, Plaintiff also argues that the ALJ's determination that he could perform the job of a construction project manager is contrary to the Commissioner's regulations. Plaintiff further argues that the ALJ failed to consider evidence that the Veteran's Administration ("VA") found Plaintiff disabled, did not consider the factors set forth for analyzing whether a treating physician's opinion warrants controlling weight, and accorded undue weight to the opinion of a consulting physician without adequate reasoning. Plaintiff's many arguments partially overlap one another. Read carefully, they essentially allege the following defects: (1) the ALJ did not properly consider the opinion of Plaintiff's treating physicians; (2) the ALJ failed to consider the VA's finding of disability; (3) the ALJ's analysis of Plaintiff's past relevant work is erroneous; and (4) the ALJ's April 7, 2008 decision is not supported by substantial evidence. This Court will consider each of these arguments in turn.

      11.     Plaintiff's first challenge is that the ALJ failed to properly consider the opinion of his treating sources. Plaintiff contends that the ALJ failed to properly apply the

---

[3] Additional limitations include the following: Plaintiff can lift up to 10 pounds on an occasional basis; and he should not engage in overhead lifting and should not stoop, crouch, kneel, or climb stairs on more than an occasional basis.

treating physician rule, and disregarded his treating physicians on baseless grounds.

According to the "treating physician rule,"[4] the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL 21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

Even if a treating physician's opinion is deemed undeserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. Under 20 C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion, if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. See de Roman, 2003 WL 21511160, at *9 (citing 20 C.F.R. § 404.1527(d)(2)); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Having reviewed the evidence at issue, this Court finds that the ALJ properly considered the aforementioned factors. The ALJ did not give controlling weight to the opinions of either Dr. Karen Mead or Nurse Practitioner Virginia Tully. Indeed, in the ALJ's words, "not only are they not given controlling weight, but they are not given much weight."

---

[4] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No. 03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

(R. at 22.)  The ALJ went on to discuss that while Plaintiff's medical reports ascribed Plaintiff as experiencing disabling levels of pain, the Plaintiff himself was engaged in activities contrary to such a finding. (Id.) Plaintiff sometimes took smaller doses of his pain medication, and at times failed to take it at all, preferring to use marijuana.  (Id.)  Plaintiff also reported riding his motorcycle whenever he could in August, 2005, and visiting his friend two to three nights per week to help with a race car, pitching in "as he is able," and attending races around four times a month.  (R. at 23.)  The ALJ also noted that Plaintiff continued living alone and was able to complete most household chores, including preparing his own meals, washing dishes, doing laundry, and going grocery shopping.  (R. at 24.)

The ALJ also charged Dr. Mead and Nurse Tully with "inserting themselves" into Plaintiff's disability claim by seeking medical proof of disability and misquoting findings from an EMG study report.  (Id.)  Ultimately, the ALJ found that Dr. Mead and Nurse Tully based their opinions on Plaintiff's subjective pains, instead of the objective medical evidence.  (R. at 23.)

Although Plaintiff vehemently opposes the ALJ's conclusions, this Court finds that the ALJ satisfied the regulation's requirements pursuant to 20 C.F.R. § 404.1527(d)(2). The ALJ discussed the history of Dr. Mead and Nurse Tully's treatment of Plaintiff, as well as the varieties of treatment they provided Plaintiff.  The ALJ also, in significant detail, considered whether the evidence supported the physicians' conclusions and whether these were consistent with Plaintiff's lifestyle.  In particular, the ALJ contrasted the results of the EMG study, which showed only a result of radiculopathy as "most likely" with Dr. Mead's

description of the same study as showing a positive finding. (R. at 23.)[5] Finally, the ALJ discussed other potentially significant factors, such as the fact that Dr. Mead described Plaintiff as totally disabled, while also writing that she would "try to document this." (R. at 23.)[6]

Plaintiff's remaining argument, that the ALJ improperly concluded that Dr. Mead's diagnosis was unsupported by objective diagnostic testing is similarly unavailing. It is well settled that the less consistent an opinion is with the record as a whole, the less weight it is to be given. See 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4). The ALJ cited a March 28, 2003 MRI study, a July 15, 2005 CT scan, the partial EMG study already discussed, and June 18, 2007 x-rays as inconsistent with Dr. Mead's determination of total disability. Plaintiff argues that this evidence can all be interpreted as consistent with a finding of disability. In particular, Plaintiff points out that the CT scan showed direct evidence of nerve root involvement or compromise of the nerve root. (R. at 429-31.) Plaintiff also challenges the ALJ's description of the EMG study as "within normal limits." (R. at 21.) However, a review of the EMG study shows that this was, in fact, the case. (R. at 642.) The ALJ correctly described the findings of the study which stated they "most likely are due to left S1 Radiculopathy." (Id.) Dr. Mead's conclusion, based on this limited study, that "EMG showed compromise of the left 4-5 root" was thus not in sync with the study's explicit

---

[5] Also significant was that Plaintiff was unable to complete the study due to discomfort and a fear of needles. (R. at 23.)

[6] The relevant text from Dr. Mead's progress note dated February 16, 2006 reads: "I will see him again in 3 months if things are not significantly improved. At the present time, he is totally disabled. He is not able to stand for any period of time, sit down for any period of time greater than an hour without having to be in the recumbent position because of the pain radiating down his leg. I will try to document this. He has no myelopathic complaints or signs at this time." (R. at 665.)

8

conclusions. (R. at 851.) While Plaintiff is correct that Dr. Mead, as a neurologist, was free to interpret the study, where that interpretation plainly did not fully reflect the study itself, the ALJ was not required to accept it, but was instead permitted to rely on the original study's conclusions. See Richardson, 402 U.S. at 399 (ALJ's sole responsibility to resolve material conflicts in medical evidence).

Mindful that this Court is required to show considerable deference to the ALJ's findings, this Court need not agree with the ALJ's conclusions. The ALJ in this case conducted a thorough analysis in accordance with the Commissioner's regulations and produced a reasoned decision based on the available objective evidence. Consequently, this Court finds that the ALJ afforded proper weight to the medical opinions contained in the record. Under the circumstances of this case, this Court finds that the ALJ's decision to afford less weight to Dr. Mead's and Nurse Tully's diagnosis is supported by substantial evidence in the record. Because Dr. Mead's conclusion that Plaintiff was totally disabled was inconsistent with the objective findings in the record, the ALJ was not required, under the Commissioner's regulations, to give it controlling weight.

12. Plaintiff's second challenge is that the ALJ failed to consider the VA's determination of disability. The VA found Plaintiff 60% disabled/unemployable based on his back injury, and labeled him as unemployable. (R. at 875.) "[W]hile the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered." Hankerson v. Harris, 636 F.2d 893, 897 (2d Cir. 1980); see also 20 C.F.R. § 404.1504. In the present case, the topic of the VA's determination arose during the course of the second hearing on May 16, 2007. In response to a question by the ALJ for

clarification, Plaintiff stated that:

> [T]he way it was explained to me, the way the VA percentage works, for a back injury the maximum percentage they will allow anyone is 60 percent. So my actual rating through the VA is 60 percent disabled/unemployable. When they changed my rating they changed it to labeling me as unemployable.

(R. at 875.)  Partial disability is not considered under the Commissioner's regulations, and thus a finding that a plaintiff has a partial disability is not inconsistent with an ALJ's finding of non-disability. See, e.g., Verginio v. Apfel, No. 97-CV-456, 1998 WL 743706, at *7-*8 (N.D.N.Y. Oct. 23, 1998) (denying plaintiff's disability benefits despite physicians' opinions that he was partially disabled). Here, the VA granted Plaintiff an evaluation of 60% disabled due to "post laminectomy and discectomy for herniated disk at L4-L5." (R. at 335.) Although Plaintiff claims that this renders him unemployable, the VA specifically denied his claim for increased disability compensation, finding that the evidence did not support changing his 60% disability rating. (R. at 330.)

Nevertheless, here the VA's 1997 decision was sufficiently close in time to the alleged onset of disability that the ALJ should have considered the VA's determination and stated what weight it was being given, in light of the hearing testimony that the VA's decision found Plaintiff unemployable. See Fitzgerald v. Astrue, No. 2:08-CV-170, 2009 WL 4571762, at *10-*11 (D. Vt. Nov. 30, 2009) (not remanding case despite ALJ's failure to properly consider VA disability consideration where VA decision rendered fifteen years after alleged onset of disability and no reasonable administrative fact finder could have resolved matter to reach different outcome). Although he engaged in extensive consideration of Dr. Mead and Nurse Tully's medical opinions, the ALJ was obligated to still consider the VA's determination. See Stokes v. Astrue, No. 7:10-CV-1129 (MAD),

2012 WL 695856, at *15 (N.D.N.Y. Mar. 1, 2012) ("[T]he ALJ was obligated to, at the very least, consider the [VA]'s determination as it was based upon the same medical record."). Remand cannot be avoided by "pointing out that the ALJ considered the evidence upon which the VA determination was based" because that determination was "itself entitled to at least some evidentiary weight *in addition* to the other record evidence." Machia v. Astrue, 670 F. Supp. 2d 326, 336 (D. Vt. 2009) (VA rating decision considered alongside oral testimony and medical evidence as another weight placed on evidentiary scale) (quotation marks omitted, emphasis in original).

Here, the ALJ's opinion does not make clear that the VA's determination was given some independent weight. Accordingly, this matter must be remanded for further consideration. Upon remand, the ALJ is instructed to clarify the nature of the VA's determination and state the weight given to that determination, and reasons in support. See SSR 06-03p, 2006 WL 2329939, at *7 (S.S.A. Aug. 9, 2006).

13. Because this Court finds remand necessary for clarification of the consideration given the VA's decision, this Court cannot evaluate Plaintiff's other arguments that the ALJ's decision was not supported by substantial evidence. However, Plaintiff has also made an argument that the ALJ's reasoning finding Plaintiff capable of performing past relevant work was contrary to the Commissioner's regulations, and this Court believes it prudent to address that argument now.

The ALJ determined that Plaintiff was capable of performing his past relevant work as a construction project manager, because Plaintiff would be able to alternate sitting and standing over the course of an eight-hour workday. (R. at 26.) Under the Commissioner's regulations, past relevant work is defined as "work that you have done within the past 15

11

years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).  The amount of time required to learn a job is based on the Dictionary of Occupational Title's ("DOT") "specific vocational preparation" rating ("SVP").  The position of construction project manager has an SVP of 7 (R. at 913.) Occupations with an SVP of 7 require 2 to 4 years to learn.  U.S. Dep't of Labor, *Dictionary of Occupational Titles*, Appendix C, 1991 WL 688702 (4th ed. Revised 1991).  The parties agree that the vocational expert ("VE") testified that Plaintiff held the position of project manager for only two months.  (R. at 911; Def.'s Mem. 15, Docket No. 9; Pl.'s Reply Mem. 2, Docket No. 14.) The ALJ's decision does not address this discrepancy.  A review of the May hearing transcript does reveal that the VE believed Plaintiff capable of performing the position of construction project manager, despite only holding the position for two months, based on his belief that he picked up the other relevant skills working as an assistant construction superintendent. (R. at 913-14.) However, this discussion was not addressed in the ALJ's decision, and this Court can only guess whether it formed the basis of the ALJ's reasoning.[7]

Accordingly, remand on this ground is also appropriate.  Depending on whether the ALJ's determination is altered by the weight given to the VA's determination, the ALJ is further instructed to address the issue of whether Plaintiff accumulated a sufficient number of years to learn the position of construction project manager.

14.     After carefully examining the administrative record, this Court finds that it cannot evaluate whether the ALJ's decision was supported by substantial evidence.  The

---

[7]This Court also notes that the ALJ listed Plaintiff as having past experience as a "Construction Superintendent."  However, the accompanying DOT number, 869.367-010, refers to the position of "Assistant Construction Superintendent."  1991 WL 687579.

ALJ has not clearly ascribed appropriate weight to the VA's decision.  The ALJ has also failed to explain how Plaintiff would be capable of performing past relevant work as a construction project manager, in light of the parties' agreement that Plaintiff only worked in that capacity for a period of two months.  On remand, the ALJ should detail the weight given the VA's decision, and substantively discuss its findings.  The ALJ should also clarify his reasoning as to Plaintiff's capacity to perform past relevant work.

      IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

      FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is GRANTED.

      FURTHER, that the case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

      FURTHER, that the Clerk of the Court shall close this case.

      SO ORDERED.

Dated:   March 14, 2012
        Buffalo, New York

                                        /s/William M. SKretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court